So we'll take the matter of U.S. v. José Luis Flores-Mejia. Mejia, I guess it is. Yes, Your Honor. Good morning. May it please the Court. My name is Robert Epstein. I'm here today on behalf of the appellant, Mr. José Flores-Mejia. With the Court's permission, I'd like to reserve five minutes for rebuttal. Thank you. The issue today is the continuing validity of this Court's decision In my initial five minutes, I'd like to focus on four critical points that have emerged from the briefing. First, the analysis here can begin and end with FRCP 51. That rule explicitly provides that post-ruling objections, quote-unquote exceptions, are unnecessary, and that a party preserves a claim by informing the Court of the action it wishes the Court to take, which is precisely what defense counsel here did when she requested a downward variance. Under Rule 51, she did not need to object, take an exception, when the Court effectively denied her request by sentencing Mr. Mejia within the guideline range. The Fourth and Seventh Circuits have both applied Rule 51 to this exact issue, and both circuits reached the same conclusion as Sevilla. All of the decisions relied on by the government from other circuits critically failed to address Rule 51. The government's reliance on Rule 52 in the Supreme Court's decision in Puckett is entirely misplaced. You only get to Rule 52 if an error has not been preserved under Rule 51, and in Puckett it was undisputed that the error there was not preserved. Here, by contrast, the issue was preserved under Rule 51 by counsel's variance request. Second, the government contends that a request for a variance is a substantive claim which does not preserve a procedural objection to the Court's ruling. In making this argument, the government is confusing the stages of appellate review with how Rule 51 applies to claims that are raised in the District Court. While it is true that this Court reviews sentences in two stages, procedural and substantive, the names given these stages do not correlate with the arguments raised by the parties it's sentencing. Indeed, it is during this Court's procedural review that this Court considers all of the District Court's substantive determinations, including guideline adjustments and departures. This Court's second stage of review considers only the District Court's final determination of sentence. Accordingly, there's nothing in this Court's review of sentences that supports the government's interpretation of Rule 51 as requiring a procedural objection after the District Court's denial of a defendant's claim. Under Rule 51, defense counsel preserved the claim by raising it in the first place. What the government is now calling a procedural objection is precisely the practice of exceptions that Rule 51 did away with. Three, in our supplemental brief, we discussed cases involving suppression motions, Rule 403 trial objections, and sentencing cases concerning both guideline adjustments and departure motions. The common thread between all of these cases and this one is that in each, the Court is required to provide some kind of statement or explanation to support its decision. Notably, in none of these contexts is a defendant required to make a post-ruling objection to that explanation. Rather, in accord with Rule 51, any error is preserved by the defendant's initial claim. The appeal is of the defendant's suppression, 403, or departure motion. Just as in this case, it is of the denial of the request for a variance. It's quite telling that the government responds to all of these cases in two short footnotes, mainly attempting to argue that they're all irrelevant. They're plainly are not, and the gaping hole in the government's argument is particularly visible in these two footnotes. Fourth, the differently from any other part of the criminal justice process. Nothing in Rule 51 sets sentencing apart. The drafters appear to have recognized that requiring post-ruling objections in order to preserve issues for appeal would not serve judicial economy. It would only frustrate it. Objections would need to be made by the parties after virtually every ruling. Accordingly, Rule 51 does not require post-ruling objections, not at any time. The government might argue that the policy calculus is different when it comes to sentencing proceedings. We, of course, strongly disagree with that, but our respective policy arguments would be better made to the rules committee rather than this court. The text of Rule 51 is unambiguous, and as such, there's no need for this court to resort to policy to interpret it. That being said, I can't help from pointing out that the statistics cited on our brief hardly support the government's claim of being overburdened by the number of appeals. It would appear that less than 1% of the defendants sentenced in this district have argued on appeal that their sentencing arguments were not meaningfully addressed. To the extent, moreover, that there's actually a continuing problem of judges failing to consider the legally valid, factually supported arguments of defense counsel at sentencing, the appropriate response would not be, as the government suggests, to amend Rule 51 so as to make it harder for defendants to preserve this issue for appeal. In the end, though, Rule 51, as it is currently written, is unambiguous. You focused on the defense counsel's preserving the claim by putting in the initial sentencing memorandum. What about how we respond to the perceived, I'm not sure I agree with this, but the perceived failure of the court to respond to that claim? Even if we accept this preserve, what about the court's failure, if you look at this record and say that's a failure, the failure to respond to that claim? The claim is preserved under Rule 51 by the fact that it was made by defense counsel. She made the request for the variance. Then this court reviews the district court's statements at sentencing to see if the district court meaningfully addressed that argument. As this court has repeatedly said, the meaningfully consider requirement, that's this court's one requirement. Those are two different things. When you object and you say, please vary, when you come later on appeal, you're not saying you did not vary, and that's the error. You are saying in sentencing me, you did not meaningfully consider or explain your reasons, and that is a different argument, is it not? Respectfully, Your Honor, no, it's not. On appeal, we're arguing that the district court committed error by not giving the variance, just as in the rule. You're saying, page 10 of your brief, by failing to meaningfully consider, erred procedure when it failed to meaningfully consider or address the argument. That's different from saying it erred because it did not. Yeah, isn't the first substantive and the second procedural? So in other words, you preserve the substantive claim that your cooperation should result in a lesser sentence. I don't believe so, Your Honor. If I may analogize, it's the same as, for example, in the rule 403 context, where we'd be arguing on appeal that the district court judge erred by denying the rule 403 objection because the district court judge failed to do the necessary balancing or failed. Let me be pragmatic. If after the district judge pronounced the sentence, you had gotten up and said, I object, Your Honor. You have not dealt with my claim. For cooperation. For cooperation. And you are required to give an explanation of why you're denying it. Would you please do so? And if Judge Dalziel had done that at that time, we wouldn't be here today. We wouldn't have this expense on the court of coming here and listening to your argument. Can you suggest a way that we can forego having to come for the mere failure of the district judge to give an explanation that you could have asked him, Judge, please give that? Respectfully, Your Honor, under Rule 51, we're simply not required to. Can you tell us how we can avoid being here today? Well, I mean, I think one way that you could possibly avoid being here today is to once there's two responses to that. One is to once again remind the district court judges of the extremely important responsibility they have to respond to the legally valid, factually supported arguments for a lower sentencing that defense counsel are making. That's one. Two, it has to be recognized that while Rule 51 does not require a post-ruling objection on our part to preserve the claim that we already brought, there is another attorney in the courtroom. I can argue about objections and exceptions, but that's beside the point. That's not the question I'm asking, so go ahead. Respectfully, I'm trying to respond to Your Honor's particular question. And what I was getting at is we're not required to make the post-ruling objection under Rule 51. We're not at sentencing. Should you be required? Should you be required? In other words, if you add a, take Rule 51, and if Judge Randell and I are right, that there's a difference between a substantive and a procedural objection, using your supervisory power of the court, as the Sixth Circuit did in Bonner and in Boston, and say, look, in some way, shape, or form, the court after sentencing says, you know, is there anything anyone else wants to say, or is, you know, any further comment, whatever. And at that point, you would make your, say, hey, Your Honor, you didn't deal with our cooperation issue. In that case, we wouldn't be here today. But that's an argument in favor of requiring post-ruling objections, which the drafters of Rule 51 rejected. I think the drafters... Wait a minute. What do the words, or the party's objection to the court's action and grounds for that objection mean? You, it seems to me, when you cite Rule 51b, you leave those words out. I'm sorry, which words are you referring to, Your Honor? Party's objection to the court's action and the grounds for that objection. What does that mean? It has to have some meaning. Well, I'm looking at the first line, which says, a party may preserve a claim of error by informing the court when the court ruling or order is made or sought of the action of the party... No, Judge Fischer's point is that after... Those words. You have no idea you can object until after you see that there's a problem. At that point, why not raise your objection then, especially if you're invited to do so by the court? That would be the post-ruling exception that the rule does away with. Yeah, but the words... You could say that with respect to any time a district court judge is required to make a statement... Mr. Epstein, my question is, the words must be there for a reason. What's your explanation of those words? Yes, Judge. I think they're there when you haven't already brought a claim to the court's attention. But he has not already... He has not already brought a claim that there was an inadequate explanation. But she has raised the variance claim. And I think what the words that, Judge Fischer, you're pointing to are when a party hasn't brought a claim. The judge, for example, it might be in this sentencing context, the defendant hasn't made any argument for a lower sentence, hasn't requested a variance. But the judge's explanation at sentencing is insufficient because the judge hasn't considered the necessary 3553 factors. There, the party hasn't raised the claim already. And under this rule, if you wanted to object generally to the sufficiency of the explanation, then you would have to object at the time of sentencing. Mr. Epstein, will you just grapple with the issue that's being put to you repeatedly and answer the question of whether or not there is a distinction between saying, I should get a variance and, hey, you didn't consider my variance. Those seem to be intellectually very distinct things. And you just keep saying, no, they're not. So explain how they're not. Because otherwise, we're just talking past each other. Thank you, Your Honor. I'm sorry if I haven't been responsive to that question. What I'm trying to explain is that the, hey, you didn't give me, you didn't explain why you didn't give me the variance, is objecting to the court's ruling. In what fashion? You don't have to object to the court's ruling. You already preserve your claim by bringing it in the first. But you don't have a claim regarding meaningful consideration until after sentencing. And indeed, if the court had said, I have meaningfully considered, and here's my reasons why, you wouldn't even have that claim. So this is a claim and an argument that does not even arise until the sentencing process has been completed. So to say that by talking about a variance, you've done enough, you can't have done enough if the claim itself, i.e. meaningfully consider or fail to explain, doesn't even exist until after the sentencing is complete and the judge hasn't done what you wanted to do. Your Honor, respectfully, it's all part of the same claim. And again, if I may analogize, let's say a defendant brings a suppression motion and the court doesn't make the necessary findings in support of the decision to deny the suppression motion, you could say that the court's failure to make the findings is a separate entity that has to be objected to. But this court has never required, no court has ever required, a post-ruling objection in that context. It certainly is different because of the two diversion processes, the substantive procedure and the procedural aspect of it. It seems to me you're arguing that if there is a problem here, the problem lies in the text of Rule 51 and its operation with Rule 52. And to the extent that we're concerned, the concern lies where it is remedied by addressing the text of Rule 51. But you're saying you did everything required under Rule 51 and we shouldn't graft Rule 52 on top of that. Yes, Your Honor. Exactly. But why, and again, this is not the best set of facts for this position because frankly, reading the sentencing transcript, it boggles my mind how one could believe that the sentencing judge did not consider the proffered cooperation, which is very clear the cooperation wasn't worth anything because of the nature of the testimony about the homicide and the nature of the prostitution ring that he's trying to give up. It simply was not worth anything to the government. And I'm not sure that the transcript allows for any other conclusion. But put that aside, what is the burden on defense counsel if after this takes place on this record, counsel stands up and says, well, Your Honor, it may be obvious, but I'd appreciate it if just for the record, you could give me a ruling on my request for a variance because of my client's cooperation or departure because of my client's cooperation. The burden on defense counsel to do that? Under Rule 51, it simply doesn't exist. Now, any case where a judge rules against the party, the attorney can make that kind of request. But I think as the drafters of Rule 51 recognize, it's generally going to be futile to ask the judge to reconsider right after he's already ruled. So the rule doesn't require that he may. But you could easily conceive of a situation, and maybe we have this in Sevilla, where the defendant is proffering seven or eight different grounds for departures and a variance, and the judge goes through and very thoughtfully explains the rejection of some of them, but doesn't capture all of them. Because the nature of a sentencing process and the emotions that can play out, it's very possible the judge simply wouldn't manage to capture all of them. And if the defense counsel stands up and asks for the judge to put on the record his or her reasoning on the unannunciated rejections, it just seems to clarify things. And it goes, I think, to Judge Roth's question, and we wouldn't be here. Right. And as I was attempting to respond before, while Rule 51 doesn't put that onus on the defense, doesn't put it on the losing party, there is another attorney in the courtroom. And if the prosecutor, to the extent the defendant, the defense attorney, can see that the district court didn't meaningfully respond, so can the prosecutor. Yeah, but if he's winning, why would he stand up and say, oh, your honor, it's just like in third grade, the kid who stands up and says you forgot to give his report. Well, why would he call the judge's attention to something that's going to result in a lower sentence? That's the tactical consideration that operates under Rule 51. Under Rule 51, we don't have to ask the judge to reconsider. We don't have to make a post-ruling objection. And then the government can decide, does it make sense for me to protect the record here and ask the judge to give an explanation? Or if I do, maybe the judge will give her a lower sentence. Isn't that intellectually incoherent to say on the one hand that the substantive and procedural aspects of this are indistinguishable, which is central to your argument. You have to keep going back, and you do keep going back to the assertion that Rule 51 says it's preserved. That's only true if we accept your assertion that the substantive argument for the variance and the procedural assertion that you didn't consider the variance are indistinguishable. So I'm not sure how you can say that on the one hand and then say on the other. But there is a problem, and it's on the prosecution to stand up and point it out. What I'm suggesting, Your Honor, it's the same problem that would exist in all of the other contexts that I refer to when the judge doesn't make the necessary statement or explanation. In that instance, in all of those different scenarios, under Rule 51, the losing party does not have to make a post-ruling objection. The prevailing party can make the choice of whether or not to. We're trying to take the next step. And if we adopted something similar to what the Sixth Circuit has done in Bostick and Bonner, I realize you, in your footnote 7, try to deal with that. But doesn't it really require more than just a footnote as to why that might not be the logical next step for courts to follow? That after the sentencing, the judge says, in some way, no magic words, is there anything else? Is there something I forgot? And then you make whatever point you want. Hey, Your Honor, you didn't deal with my cooperation issue. I think the problem with that is, one, that doesn't change Rule 51. That doesn't alter the preservation requirements of Rule 51. You couldn't have the judge at the end of a suppression hearing, when he makes his decision from the bench, say to counsel, have I made any mistakes here, point them out to me now. And that would protect against an appeal. Is it the case that once a defendant raises an issue, a sentencing issue, let's say in a memorandum, and let's say you load up the memorandum and you include 12 issues on appeal, is it the case that you have a right to appeal all of those issues without any objection at all at the time of sentencing or after sentencing? Well, we only have a right, the defendant only has a right to meaningful consideration of those arguments that are legally valid, that are factually supported. If it's in a memorandum, it could be 15 issues. What you're saying is that you have a right to appeal all of those issues as long as you present it to the court without any objection whatsoever. Well, it's not without any objection whatsoever. The claims have been raised to the district court. And this court has held that it's sufficient to at the sentencing proceeding. But in that event, the court's response to those arguments can be extremely, extremely minimal. We also have to recognize this meaningful consideration requirement is not an onerous one. It could be met with one or two sentences. That's what we're trying to get at. It's also not onerous for you, is it, to say, Judge, I object. By the way, Judge, you forgot these other five issues. Could you address them now? And as a practical matter, when you say it's not onerous, as Chief Judge McKee pointed out, Judge Talzell spent the bulk of this sentencing hearing talking about cooperation. Cross-examining was allowed, an examination of the witness to talk about the danger that he faced as a result of his cooperation. It goes on for pages and pages and pages. And yet here we are because the appeal was made that he didn't meaningfully consider it. So when you say it's not an onerous thing, that just doesn't really pan out in the face of this set of facts. Evidently, a 20-page sentencing transcript to the point where Chief Judge Talzell says we're beating a dead horse still gives you an opportunity to come in and say it wasn't meaningfully considered. So, I mean, how is that not onerous? Your Honor, respectfully, what you're referring to there, the judge wasn't addressing the cooperation argument there that the defense attorney was making. He was addressing a different variance request, which was because of the fear for his life back in Mexico. We can argue about that, but I think it could fairly be said that he was considering, in part, the assertion that I've cooperated and am in danger, and therefore should get some consideration. That's a fair reading of the transcript. Of that prior cooperation, certainly. But all I'm suggesting, Your Honor, is that the separate variance request that I've cooperated after my arrest in this case, I have attempted to assist the authorities, I sat for two proffers, I gave information, and just to be respectful, I have to disagree that it's obvious here that the cooperation wasn't worth anything. He gave sincere, truthful information about a prostitution ring in New Jersey. The homicide was hearsay and inconsistent with surveillance tapes, and the court decided that there was a real credibility issue. And as to the prostitution, it may have been helpful for state authorities, but it was clear and Talzell said on the record, and I think you conceded, it wasn't you, it was you, I guess, who argued this, the sentencing. It was actually a different counsel. Okay, you're right. Let me ask you this question. The counsel conceded, though, that it wasn't helpful. And the way that the transcript went forth as to the reason, I guess it was the reason that he fled, and the fact that he'd never told anybody that he was fleeing because he felt threatened. And this was 98% of the sentencing hearing, and Judge Talzell was incredulous. And so for you to then say, well, wait a minute, you didn't address my departure. If you had at the time, Judge Talzell would have said, you've got to be kidding me. There's no departure for him having given non-helpful cooperation when he's clearly been lying about the reason that he left. And it's kind of like a sandbagging situation that the court talked about in Puckett. You want to bring on appeal something that you really should have said to the court, I have a problem with this. And the court would have said, you've got to be kidding me. Respectfully, Your Honor, it can hardly be sandbagging when we're following this court's decision in Sevilla, which specifically said, if you make a legally valid, factually supported argument for a lower sentence, and the court doesn't meaningfully respond to it, you don't have to make a post-sentence objection. We can reconsider Sevilla today, can't we? Yes, but I'm just responding to the suggestion that we were sandbagging the district court. There's no incentive for you to sandbag, right? I mean, that's your point. No, I mean, we're raising this claim with the hope that the court is going to meaningfully address it and give the lower sentence that we think is justified by the fact that he did attempt, did make sincere efforts to aid the prosecution. Ms. Frederick said, the issue was, and this is going to the prosecution corporation, the issue was that the only time that I seem to be interested in it is if young girls under age are being transferred against their will or even if adult women are being transferred against their will and they have evidence of that. We didn't have specific evidence of either of those things in this case. She concedes that that cooperation is really not at all beneficial. I mean, that didn't really seem to be contested. It was presented. So even Ms. Frederick's conceded, you know, this is all we got and it's not worth very much because of the policy of ICE. Well, it wasn't worth very much in terms of the government actually acting on it and bringing a Well, earning a 5K1 departure motion, it's still worth something in terms of the fact that the defendant made sincere efforts to cooperate. This is something that defendants typically receive some type of variance for, even if it's just a few months below the guidance. Suppose the facts were slightly different. Suppose it was excellent cooperation, but not useful to the feds and the state didn't come to the sentencing, but it's apparent by the led to some low-level convictions. You make the argument, it's in your papers, court doesn't say anything. I presume that some of the questioning that's been posed to you is, you know, this isn't really good cooperation. What are we doing here? We're going to change the facts for a moment. It's great cooperation. It's apparent it's great cooperation, but nothing was said, right? Do those facts change the dynamic at all? Well, I think it changes the emotion a little, perhaps. But under the law, either way, the defendant doesn't have to make a post-sentence objection, a post-ruling objection. That's simply not required by Rule 51. Are you concerned at all that the dichotomy that's being discussed... He's got some rebuttal time. Judge Smith, you're on the phone. I am, Chief. Any questions at all? No, thank you. I've been attentive, however. All right. Well, that's no evidence of that statement, but we'll accept your word for it. Judge Smith is in an undisclosed location and he's beaming in remotely. Thank you, Mr. Bernstein. We'll have you back. Mr. Zossmer. Good morning, Your Honor. May it please the court. Thank you very much for the privilege, again, of appearing before the court. The dispute here obviously involves Rule 51, and I will get straight to that. Rule 51 says that a party has to let the court know of the action it wishes the court to take or the party's objection to the court's action and the grounds for that objection. In this case and in many others, the defendant did make very clear the action it wanted. The action it wanted was a variance. It wanted a lower sentence based on this purported cooperation as well as on two other grounds. It did not and could not at that time object to the sufficiency of the court's explanation. Certainly in asking for a variance, the defendant in this case did put the court on notice that it had to meaningfully consider this request for a variance. But the court has no way of knowing, once it gives an explanation, whether that explanation is insufficient or not. It is. It's a separate objection. It's separate procedurally versus substantively. But just in simple language, it's a different objection because the court here did give an explanation of its sentence. It was faced, as courts are every day, with a complex sentencing matter in which you have varying claims. People are shooting at me in Mexico. The 16 levels is overstated in the guidelines. I tried to cooperate. And the judge spends a lot of time and gives, devotes the attention to each issue, and he thinks it deserves. And then at the end, he says the reason for his sentence. The reason for his sentence, Mr. Flores Mejia, is that you have an absolutely terrible record. You have reentered the country six times. And I'm not giving you credit for these other things because you so clearly fall within the guideline range. At that moment, Judge Gozal has every reason to think that he's complied with the requirements. And now the defense has a different objection, which is you didn't say everything you're supposed to say. You need to say something else about the third of my three grounds, the weakest, by the way. That's a new and different objection. And Rule 51 clearly requires it. It's not an exception at that point. It's an objection that can be raised for the first time at that moment. And because it wasn't raised, plain error review applies. Now, it's interesting that this would be true even if a judge said nothing. And the reason for that is the Supreme that the defense doesn't want to cite, but its importance cannot be overstated. RETA is the Supreme Court case on what a judge needs to say. In RETA, the defendant asked for a variance on three grounds. I think it was health, military record, fear of abuse in prison. And the judge's entire response to that was a guideline sentence is appropriate and outside the guidelines would be inappropriate, period. Nothing about military record, nothing about the particulars that had been cited during the hearing. And the Supreme Court says that's enough. It says in a relatively straightforward matter, when the court decides to give a within guidelines sentence, it does not need to say more. It's within the court's professional judgment, is what the Supreme Court said. So now put yourself in the shoes of a district judge who is now facing sentencing, has read RETA, is following the mandate of the Supreme Court, and well thinks that the case before her is the same case. That there are variance requests, but a within guidelines sentence is appropriate and simply says it's appropriate. Even in that situation, which is the situation we don't have here, the judge is not required to say more. And if a party objects, the time to stand up and object is dead. Otherwise, we face this. We face appellate proceedings, briefs, three judges, all the court personnel, the clerks, going back to the district court, doing it all over again for something that can be resolved in a matter of moments by saying to the judge what an attorney is supposed to say. My friend, Mr. Epstein, wants to put the burden on the district judge and maybe also put it on the prosecutor. But no, district judges do have a lot of responsibilities. This is not one of them. The judge's responsibility here is to impose sentence and to give meaningful consideration. If the party thinks the court did something wrong, the party sneaks up. And by the way, the last thing I'll say as my preliminary time expires, this applies to both sides. This is not a defense prosecution. The government as well, if it believes there's been an insufficient explanation, has to object or is subject to plain error review. We've acknowledged that in briefs we filed in the few sentencing appeals that we've brought in recent years. And the best place to look is this court's en banc decision in Tomko, where the court said there was an insufficient explanation because the court said nothing, and Tomko cited Rita and said no, this was fine, you didn't say anything about it, and the court wasn't required to say more. So Rule 51 required an objection. There was none. Plain error review applies. Let me ask, you're ceding the rest of your time? Yes, sir. You mentioned Rita and what it said about the guidelines. As you know, the Supreme Court has said that a sentence within the guidelines can be presumptively reasonable, but it's allowed us the leeway of saying that we're not going to follow that rule and we have taken the position that a sentence within the guideline is not per se presumptively reasonable. Your reference to Rita and what the court has to say when it's a guideline sentence, is that at all altered by the practice we have in this court by not accepting a guideline sentence as being presumptively reasonable? No, and I think there are different issues. I think that a district court cannot presume that a guideline sentence is reasonable. An appellate court can, according to the Supreme Court. This court has decided not to. If I can invite the Enbank court to re-address that. No, don't even go there. Don't even go there. But in any event... You only rule until then, Zosmar, you can do it. I keep trying. But there are different issues, though. The standard, the question here is the preservation of an objection. It's not whether the sentence was presumed reasonable or not. This court, even if it doesn't presume that a within-guideline sentence is reasonable, still has to address the procedural sufficiency of the proceeding and there Rita is controlling. And Rita says a judge does not always have to say more in a conceptually simple matter involving a within-guideline sentence. Rita was conceptually simple and the court made great pains to say that in a simple matter such as this. But I guess an argument you would have is how is the court to know whether it is that situation where the next case the Supreme Court gets and says, you know what, it really wasn't that simple and the court should have done something. But maybe having counsel say we don't think this is simple so therefore we need you to say something would be a good idea. Do we need to get, as part of this Enbank, get to the concept of meaningful consideration and talk about what is required? I mean we have rejected rote reasoning, if you will. Do we need to get to that issue as part of this Enbank? I don't think so and I don't think anyone has objected to that. Now there is a dichotomy. This is from the Cooper case, which was the first case. Cooper says that a court has to give meaningful consideration to a colorable argument. And certainly these arguments here were colorable, we're not disputing that, and the court has to consider them. But it's a separate question as to what does the court need to address. Cooper says that an issue of recognized legal merit has to be addressed. Sevilla called it a meritorious issue. Well that's different, now you've kicked it up a notch as to what you have to talk about. I would say that that part of it is probably abrogated by Rita because Rita does say that it's up to the district judge who doesn't have to say much. But if that is the rule we continue to apply, it doesn't pose any difficulty here. Yeah, but the way that the district court considered each of the defendant's Well, the way the district court considered it, according to Rita, was it asked questions and it restated it, but it never expressed its reasons. But it said, the court did say that the court did consider each of the arguments. Right, and here the court did ask questions also. If you look at pages 74 and 75 of the transcript, that's where the prosecutor summarized the erstwhile cooperation. The court asked questions as that proceeded. So it's really the same situation. But what I'm saying is that that's the merits. Let's step away from the merits for a minute of, was Judge Gozell's explanation here sufficient? I think it was. That's the merits. But as to the standard of review, the important point about Rita is that a district judge, having read Rita, doesn't know that his or her explanation is insufficient until someone tells them. What about 3553C? It says you have to give statement of reasons, the statute tells the court what to do. So why isn't that sufficient direction? Well it does, but actually 3553C is limited, where the guideline range is 24 months or more. As it turns out in this case, it wasn't 24 months, it was a 21 month, or 19 month spread I think in the range. However, interestingly for 3553C, this court has specifically held that if you don't raise that objection, if you don't point out to the judge that she failed to give the explanation, it's subject to plain error review. So there's an inconsistency, and I'm sure that's why we're here at the bank. There's inconsistency between this court's 3553C jurisprudence and Sevilla. The court's jurisprudence we would say regarding 3553C is correct. As with any error, plain error reviews applies if the objection is not brought to the attention of the district court. Do you think that this case can be distinguished from Sevilla, or do you think that we have to overrule Sevilla? I think you have to overrule Sevilla. I don't see, I mean Sevilla, you had a number of variance requests that were made. Two were not specifically addressed, and the court said that that's not subject to plain error review. That's wrong, and that's imposing a regular burden. Mr. Epstein says 1% of criminal defendants. That's a lot of criminal defendants. But in Sevilla, the sentence went down on remand from 72 months to 57 months. Oh it did, but that was a very different circumstance because one of the variance requests that this court said was not addressed was the crack powder disparity, and a lot changed between the original sentencing and the resentencing in Sevilla. He might have gotten a resentencing anyway. The court will recall that Sevilla was sentenced at the beginning of 2007. This court ruled at the beginning of 2008, but by that time the Supreme Court decided Kimbrough in December of 2007 reversed the precedent of this court and many other courts and said a court can categorically reject a crack sentence based on that disparity. So everything changed for Sevilla. If we were to adopt, as we talked about with Mr. Epstein, the Bonner-Bostick supervisory power of our court to say, hey, at the close of sentencing invite any comment as to whether there is an issue that counsel may have with what the court has said at sentencing, would that be a problem? There is a problem there, and the problem is in terms of the procedure of inviting district judges to do that, I have no objection to that, and I don't think anyone reasonably could. That's a salutary thing to do. It does put another burden on district judges, but there's nothing wrong with it. The problem is the second half. But it's a burden on district judges? Well, it's an extra requirement that they have to remember. If it's a burden on district judges, you're saying we shouldn't do it? No. What I'm saying, though, is that the second part of the Sixth Circuit's requirement is the problem. What it says back in that, I think it's Bonner that says this, is that a judge needs to ask if there are any objections, and then if the judge doesn't do that, there will not be plain error review. Any objection will be preserved. Is that in tension with Rule 51B, then? It is, and more specifically, it's in tension with the Supreme Court's decisions in Puckett and Marcus. Marcus says very clearly a lower court cannot change the plain error rule. It's such an easy thing to do, though, just to say any objections. It's really two words. Why is that so burdensome? I'm not objecting to it, and I think that that would, as I said, be a salutary thing. If I'm within plain error review, not apply, if a judge forgets, that's the problem in the Sixth Circuit. Ruling in the Sixth Circuit might take a different view of it, also, after Marcus. In that case, if the judge were to forget in the Sixth Circuit, I would imagine the prosecutor would stand up and say, Your Honor, Bonner has said that you need to, and the court would do it. Isn't there a post Bonner rule that we should be considering Waller, which is post Bonner, which says if there is a tolerable claim, it has to be remanded? Well, that, again, we disagree with that. I think it's part of the same thing. I know you disagree. The Sixth Circuit is actually a little inconsistent, because then they have the judge decision, which is very similar to the situation in this case, where they pretty much reject all the arguments we've heard from the defense today, and they apply plain error review. So there is some tension in that court's decisions. There's some tension in the Sixth Circuit, too. There's disagreement in the Seventh Circuit. All the other circuits are pretty much in line. This question, one thing I'm concerned about, and that is, you're suggesting that we reverse Sevilla. And I'm wondering, as we think about that, isn't that undermining Gunter? Because we've taken pains with post-Gunter cases to continue to focus on what the district court should do, you know, identify the guideline issues and rule on them, rule on downward departures, variances, and then address the 3553A factors. So you go through a typical sentencing. XYZ is addressed. There are issues that are not addressed. Now, if I'm understanding what you want to do as it relates Sevilla to Gunter, if the defendant at the pronouncement of sentence doesn't say, Judge, you missed X under Gunter, you missed Y under Gunter, then those are plain error review. You're looking at that as procedural and not substantive. And aren't we essentially taking the district court off the hook to focus and address each of the issues that it should under Gunter? I don't think so, Your Honor. I think it's no different from any other matter that's presented to the district court. There are procedural requirements, calculate the guidelines, rule on departures, explain the sentence. And at each step, if there's an objection, the person should make it. This is where Puckett comes in. Puckett says very clearly. I want to hear Puckett, but just let me interrupt one second. I don't know. Forgive me. You say they have to object right away. I've made a downward variance motion. I've argued it at sentencing. You haven't said anything or you haven't said anything, even in line with Rita. And I think Rita says a little more than you say, but that's not important. How does that not change the dynamic? Well, because some things require objections and new objections and some don't. For example, a guideline ruling is procedural. If someone says, I don't want that two levels, the judge rules and says, I'm imposing those two levels. You don't need another objection at that point. There's nothing additional for the district court to do. Here we have a separate procedural requirement to explain the sentence. And the judge, again, has no way of knowing. To get back to Puckett, what Puckett says, rules 51 and 52 are mandatory rules. And what the Supreme Court says is they exist for good reasons. They force a party to address it to the court that is best positioned to address the issue. They promote judicial efficiency because it allows the court to rule on it right at the spot and save all that time. And so Puckett fully applies here in saying that this judge could address any concern about the explanation immediately. But Puckett's a different case. In Puckett, the whole idea that the plea agreement was breached was nowhere on the radar screen. If there had been a rule that in sentencing courts must consider whether there are breaches of plea agreements, it would have been a different case. But, I mean, it wasn't before the court. It was nowhere. And all of a sudden, on appeal, they say, oh, by the way, it breached the plea agreement. Well, wait a minute. Here, by virtue of the cases, we've said you have to consider this. You have to consider this. You have to meaningfully consider. You have to explain your reasons, address, you know, colorable arguments. So the courts have to do that. There's an obligation when they go into sentencing. There was no obligation in Puckett that the court must examine whether plea agreements have been violated. Well, that's right. And I'm not saying Puckett is factually on all fours. We haven't said that. But in terms of its explanation of the reason and the necessity of the plenary rule, it is on all fours. And again, once again, here, yes, this district judge was on notice that he had to give an explanation of the sentence. Do you think that the response, okay, thanks, anything else, do you think that response is adequate to address a request for a variance? In some contexts, yes. And here, certainly. Here, what really addresses the variance— Do you think that response tells a reviewing court or the defendant the rationale for the sentence that was selected? No. The real rationale and where we see the real answer to the variance is not, okay, thanks. Where we see it is in the explanation of the sentence. The judge gives a very cogent and really inescapable explanation of the sentence in saying that you have a terrible record. You've come back six times. There are consequences for that. That's the answer to why you're getting a guideline sentence, notwithstanding the fact that you talked about prostitution and treatment. So why should the defense counsel have to get up and say anything if the record here demonstrates that there was meaningful consideration? What more should he or she have to say if we use this record which you've just described as reflecting a consideration of the variance argument? Right. Well, that's my position that there was no error at all. If they think there's an error, they need to get up and say to the judge, Judge, I'm not sure you addressed my cooperation. But they think under that theory, they think they preserved it. They could have had the same view as you, except they think it wasn't considered enough. You think it was considered sufficiently. The district court judge presumably thought he considered it sufficiently. Why should the defense counsel have to stand up again and say, I object. You didn't give me enough explanation. What if the response is, I've made findings. I rely on those findings. I've considered your argument. And he says nothing else. That would be sufficient. Why should he have to say more, though, on the record you've just described as being sufficient? Well, because he wants to come to this court and take up the time of this court to say, he didn't give me consideration. If you have an objection to make, it should be made to the district judge. That's the fundamental rule. So on her hypo, the last part of it, you'd say that does not require plain error review? I've posed it to the judge. It's an error. Judge says, it's fine. Absolutely. At that point, no plain error. Correct. That'd be review for abuse of discretion. Let me just state that again. In other words, all you have to say is, I object to that sentence. Well, you have to get out of plain error review. Oh, sure. You have to explain the objection. You have the same argument that was made in this court. Your Honor, I'm not sure you addressed my request for a variance based on cooperation. That would preserve it. I'm surprised to hear you say, Mr. Zalzman, that you have to make an objection. I thought the crux of your argument was that the issue has to be raised. And if the issue is not raised below, then it's susceptible to plain error review here. I'm not making a distinction between that and an objection. If a party says, Your Honor, could you please address this, that is implicitly saying, I don't think you have. I'm not going to stand on any formality of saying you have to say, I object. You have to raise the issue. Is it a formality, though, because of what Judge Easterbrook and Judge Posner wrote, what the Rule 51 says? I mean, is it a formality? Or are these words significant, whether we distinguish among issue versus objection versus exception? I think the key is, Your Honor, you have to preserve the issue. And you have to raise it to the district court. And it was not raised here. I do want to make one point about the fact that— Actually, I want to take us back to 51, because I really want to understand this. So Rule 51 isn't an impediment in this instance, as you say. When is it? Well, it's an impediment under the facts of this case. If a party says, Your Honor— You say Rule 51 shouldn't be an impediment to what you're suggesting, right? Well, what I'm suggesting is, if a party says, Your Honor, could you please explain more, that in essence, I think, is the objection required by Rule 51. That is what is required, to raise the issue when it can be raised. What do you say Rule 51a means? Rule 51a means that you don't need an exception once you've already made your objection. Now, what's today, in today's jurisprudence, what's the difference between an exception and an objection? Well, the difference, in this case, is very clear, is the request for a substantive variance. Here, the defendant said, I want a lower sentence. That's the substantive component. That, the judge then imposes a within-guideline sentence. He's made the objection, because he's stated his position. That's where you don't need an exception. You don't need to stand up one more time and say, Judge, you just gave a within-guideline sentence. I wanted a lower one. I take an exception to that, or I object, or whatever words you want to use. That's the purpose of Rule 51a. But here, what we have is somebody saying, you didn't sufficiently explain your sentence. That's never been suggested before. How do you deal with the question of infinite regress that showed up in the papers for Mr. Flores-Mejia that, assume you've got a case, and the defense counsel stands up and says, I don't believe Your Honor has given an explanation. The court says, I gave an explanation. And then the defense counsel has to say, well, Your Honor, respectfully, I don't think it was meaningfully considered, and you need to give a ruling on the record. And the court says, yeah, I think I did. And then the defense counsel has to say again, Your Honor, I'm still objecting, because it's still not meaningful. I mean, at what point does defense counsel get to sit down and say, well, I guess I've said enough? Oh, I think in your scenario, Your Honor, I'd say the first time. There is no, but what makes that second time different logically than the first time? The judge says what he or she says. We've all attended, I assume many of us have attended sentencing and at least reviewed hundreds of records. People don't make unreasonable objections. If you have an objection to make, the judge will respond. If I could, before you go off the point, I'd like you to address the logic of it, though, because I understand your opponents would be saying, this is not different from other kinds of situations. We don't require somebody to stand up and say, Your Honor, I don't think you've adequately explained your suppression ruling. You need to do more. We don't make them do that. So what's different? Why should they have to stand up and say, you haven't meaningfully considered. You need to do more. And then if they do have to do something and stand up and say it, why shouldn't they have to get up a second or a third time if it's still not meaningfully considered? If the logic of it is, you haven't meaningfully considered. If you say you haven't meaningfully considered, then the judge says, yes, I have, and I have nothing to add. There's no logical objection to follow that. If the judge does say, oh, I have, and here are two or three more reasons, and the person now says, well, you know, that third reason you gave, not so sure about that one, I would expect the lawyer would say that. But in the ordinary case, we're not in an infinite loop. It is not going to happen. And I want to, if I can illustrate that. Yeah, while you're going, why don't you make a point about this record? I do, and it answers specifically this question. And I apologize that I overlooked and addressed this in my brief, is that if you read the record to the end, it happened in this very case. In this case, the real event in this case, the real action, was the allegation that Mr. Mejia was being shot at in Mexico, and that's the reason he returned to the United States. Had nothing to do with this third variance issue. And that's what the district court spent a lot of time on, and ultimately found Mr. Flores Mejia incredible. And the reason he found him incredible was because when he came into the United States and was confronted with an immigration agent, he said nothing about this. And so the judge denied it, denied the variance and posed the sentence. What we see, starting on page 111 of the record, is Ms. Frederick, who's an outstanding advocate for the defense, who's no wallflower, went back to her office, looked at her notes, and saw that indeed Mr. Flores Mejia had mentioned this to the probation officer. She called the probation officer. He called the court. They reconvened at 1 o'clock. The judge spent another 20 minutes on this. He heard from the probation officer. And then he restated his finding based on everything he had heard. That's how it works. Now, Ms. Frederick did not have to get up at the end and say, I still object, I still object. Certainly, that's all been preserved. But they're not raising it because the judge made a credibility finding. Judges are responsible. They know what they need to do. Attorneys, hopefully, are responsible and know what their obligations are. And that's all we're asking here. And we wish to impose that requirement on both sides, on both the government and the defense, because that, to us, is the straightforward understanding of Rules 51 and 52. And we see it in this very case. Isn't it a little unrealistic, though? I mean, as a district court judge, sentencing typically occur at lunchtime or at the end of the day. And after I impose a sentence, I'm off the bench. I've said it. It is what it is. And then for defense counsel to have to say, oh, but Your Honor, you didn't meaningfully I mean, all that's going to happen here is the judge is going to say, yes, I did. Goodbye. It's not going to be, really, the meaningful consideration. And yet, the statistics are that when we say you need to meaningfully consider, it goes back. And there's a lot of reductions in the sentence, which I really found to be pretty surprising. Maybe it is crack cocaine, just the crack disparity like this. But when we send it back and say, well, you didn't comment on the disparity. And then it goes back. And indeed, the judges give a lower sentence, intimating, well, I didn't consider, but now I am. And that result, which might be the fair result, is not going to be achieved because it's a practical matter. At the end of the sentencing, the judge is going to say, listen, I've listened to everything for four hours. I meaningfully considered everything. And I gave you a sufficient explanation. Goodbye. Your Honor, I don't see that. There are several parts to your question. In terms of judges running off the bench, if we can say that, that doesn't happen. I've yet to see a proceeding in which a judge isn't there long enough that they're a party to raise a reasonable objection. I've attended many. I had the privilege of being in sentencing hearings before Your Honor when you were on the district court. You didn't do that. Your colleagues didn't do that. But if someone had said at the end, you didn't meaningfully consider or explain, I might have said, yes, I think what I gave you was sufficient. Well, that's the second part of it. And I think I had a little trouble with the defense brief because I think it actually gives a low regard for judicial ability. The statistics, I mean, are a very small set. We don't have statistics on what really happens in all of these cases in general. But what we do know is that judges have integrity. And as we see in this very case, listen to arguments and are willing to reconsider. There's a strange dichotomy in the defense. Isn't that an argument to not go to plain error review? I mean, based on what you just said, shouldn't we just leave Sevilla in place and say, look, if there's a problem, we'll see it. And this case is an example. Probably should be turned around, but not on plain error review, but because the court did meaningfully consider it. Let them have their shot. Because of Puckett and Rule 52, we don't have that choice. And that's what Puckett and Marcus both talk about, which is because of the other interests in judicial efficiency and to prevent sandbagging. I haven't mentioned that word yet. But that's really important. If Sevilla stands, there is no reason for any counsel to say anything. And other than to sit still once they see this. What evidence do we have that there's this sandbagging? What evidence do you have? Well, we don't. But we do have the Supreme Court telling us the courts need to be mindful of this and enforce the plain error rule accordingly. A few moments ago, you said that the obligation is on both sides. I mean, so why isn't the government in the same position as the defense? That is, if something obviously wasn't addressed, speak up and share the burden. It's on both sides, depending on whose ox is being lured. The government does not stand up, nor does the defense, when an error is made throughout the trial proceeding that is unobjected to. It's not the opponent's job to cite the errors that are being made that harm the opponent. That's not our adversary system. But here, there is a very specific objection that's being made to this court for the first time. And the district judge did not have an opportunity to address it. And that's where Rule 52 is mandated. And Puckett says it has to be followed. The answers to these questions, I would respectfully suggest, are all present in Puckett and Marcus. So if we reject your interpretation of Puckett, defense wins? No, I mean, well, if you reject my interpretation that- I mean, you'd say Puckett, Puckett, Puckett. You'd say- I believe in my position. My position is that people have to make objections and that they don't, subject to plain error review, and that this is required by Rule 51, with Rule 52, Puckett, Marcus, Nader, every other plain error- The only thing you can really take away from Puckett is, in order to give meaningful consideration, it is a balance. It's a balance between the defendant's rights and judicial efficiency. And that's what we're trying to grapple with here. Exactly right. And I believe, Your Honor, that the Supreme Court has struck that balance. And what it's also said is that- But Puckett, as Judge Vandell points out, was a completely different case. The issue was never brought up at all. Oh, sure. But you can almost say, in this case, this issue was not brought up, where the court gives an explanation that does, in some sense, respond to the argument. And the defense now says- The issue of cooperation was brought up here. Right. But the insufficiency of the explanation of the sentence was not. Yeah. But if you talk about Rita, as you have, Rita says the sentencing judge should articulate enough to satisfy the appellate court that he has considered, presumably he or she, has considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. And you're saying, on this record, that Judge Dalzell had enough? Right. Because you have to look at the holding of Rita. Having said that, Rita then addresses a case in which the district court gave a within guideline sentence and said nothing about the specific arguments. And even with that standard, the Supreme Court says that sentence is affirmed. So we have to look at the holding. And the holding is conceptually simple, within guideline sentence. You don't have to say more. And that is this case. So thank you. Your light came on during that answer. Judge Smith, are you still being attentive? Thank you. And no questions at all? No, thank you. Okay, thanks. Thank you very much, Your Honor. Justine, you have some time? Mr. Epstein, can I ask you to begin where Mr. Zalzwer left off? He said a minute ago, the issue was not brought up. You rely on Judge Easterbrook's opinion in Bartlett. Yes, Your Honor. And in Bartlett, he wrote, but when an issue is argued before the judicial ruling, counsel need not take exception. And that's, you agree with that? Yes. And you say in your reply brief at page five, in contrast to Puckett, Mr. Flores Mejia raised the issue of his cooperation in the district court, properly preserving the issue for this court's review. And I think Mr. Zalzwer agrees with what I just read from your brief. My question to you is, where in the district court did you raise the issue that the district court neglected to consider the question of cooperation? We did not, because we consider that to be part of the issue that we raised. So we really have a definitional challenge, and the whole case would seem to turn on what the issue is. Because both sides agree that issues presented are not subject to plain error review. And I think you just conceded that issues that aren't presented are subject to plain error review. That's correct. We need to just define the issue. Right. So the issue that was raised in the district court was the request for the lower sentence on the basis of the attempted cooperation. We weren't requesting an explanation, we were requesting a lower sentence. On appeal, we're arguing that the district court erred in not giving the variance. And in making that argument, we point to the fact that, hey, the court didn't even give the meaningful consideration that this court required. Just as in a Rule 403 case, we might say, raise it the exact same way. The issue is the judge's denial of the 403 objection that we made. And look, the court erred. Part of the reason the court erred by not granting the objection is because the court didn't do the balancing this court required. It's the procedural substantive distinction that we started this with. That's exactly where we started. And that there's not a real distinction. This court has opted to review sentences in two stages. But that doesn't mean that a separate procedural objection has to be made at the district court level. The procedural objection that Mr. Zausmer is referring to is the exception that Rule 51 has done away with. And it was very interesting to me because, Judge Jordan, you specifically asked Mr. Zausmer to respond to the suppression point about how is this case any different than the judge's deficient explanation at the end of a suppression motion. And there was no response because none could really be given. There's no distinction. What about 353A? Doesn't that create the distinction? Here, unlike in suppression, Congress has enacted a statute which lays out specific things that a court has to consider. And the issue is whether or not the court has given meaningful consideration to the things Congress has mandated. In suppression, you don't have that. There's a finding of fact and an application of those along the way. Your Honor, I actually do. Rule 12d requires findings to be made at the end of a suppression motion. This court requires that. But not specific considerations of characteristics that are enumerated within the rule of the statute. Well, it would be findings that are relevant to the particular suppression motion. So, for example, in United States v. Lowe, this court remanded the case because the court didn't make those necessary findings necessary for a determination in that case. And there was no post-ruling. There's a distinction between the findings and the process, I'll call it a procedure, if you will, of applying certain required considerations in reaching a given result. At least, in my mind, there's a distinction between those two things. Because in suppression, there's no obligation on the judge hearing the suppression motion to address all the arguments raised by all the parties. There's just an obligation to make findings, whatever the judge chooses. Correct. And there's no obligation at sentencing for the judge to respond to all the arguments. He only has to respond to those that have some merit, those that have some legal validity to them, and that are factually supported. Now, I thought I heard you say, in your principal argument, that courts typically vary downward where cooperation is attempted, but it doesn't warrant a substantial assistance, or it doesn't generate a substantial assistance motion. I'm wondering, what's your support for that? I've conducted plenty of sentencings and had that argument presented plenty of times. And it's not my experience that courts typically vary downward where a defendant says, my cooperation didn't warrant a substantial assistance motion, but please, please, please depart or vary. I believe we cited a number of cases where that occurred in our initial brief in this case. And did those involve the crack cocaine change in sentencing considerations? No, the cases I'm referring to were cases where the defendant attempted to cooperate with the government and didn't need to have a 5K motion, but the defendant did get a variance based on his attempted cooperation. I want to ask him a question that I asked him. The light is on. Judge Smith, anything on rebuttal? No, thank you, Chief. Okay, thank you. Thank you very much. Very excellent argument, very fine. Thank you.